IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| First Defiance Financial Corporation, et al., | Case No. 3:08 CV 2429 |
| Plaintiffs | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Progressive Casualty Insurance Company, | |
| Defendant. | |

### INTRODUCTION

On February 25, 2010, this Court entered judgment in favor of Plaintiff First Defiance[1] (Doc. No. 51), finding that Defendant Progressive was obligated to cover First Defiance's loss as defined in the policy. Pending now before the Court is Plaintiffs' Motion for Summary Judgment as to Damages (Doc. No. 53). The parties have submitted a Stipulation (Doc. No. 54-1) as to the material facts. The parties dispute five issues regarding how to calculate Progressive's liability (Doc. No. 54).

---

[1] For ease of reference, and consistent with this Court's prior Opinion (Doc. No. 51), the Court will refer to Plaintiffs collectively as "First Defiance."

**STIPULATED FACTS**

The parties agree to the following facts (Doc. No. 54-1):

- First Defiance paid $931,921.31 to reimburse its customers who were the victims of a fraud perpetrated by its former employee, Jeffrey Hunt. This amount included payment to the customers for interest the customers would have earned but for the theft.[2]

- First Defiance recovered $57,219.54 of its loss from Hunt, and Defendant is entitled to a credit in this amount.

- The Bond has a single loss deductible of $125,000.

- First Defiance incurred more than $10,000 in fees in preparing its proof of loss, including fees of counsel and forensic accountants.

- Cincinnati Insurance Company paid First Defiance $50,000 pursuant to the Commercial Crime Coverage Part of a policy issued by Cincinnati.

- By virtue of a settlement agreement concerning First Defiance's claims against the former OBS Defendants, First Defiance "shall be deemed to have recovered the amount of $202,779.53" from OBS for losses attributable to brokerage customers.

**STANDARD OF REVIEW**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine

---

[2] The Complaint included allegations against Defendants On-Line Brokerage Services and OBS Holdings (OBS). First Defiance reached a settlement agreement with OBS, to which Progressive is also a party. As a result, the OBS Defendants were dismissed from the case (Doc. No. 49). Claims relating to the losses attributable to Hunt's thefts from several brokerage accounts are therefore no longer subject to recovery (Doc. No. 45, p. 14). As such, Progressive is liable for Hunt's thefts from the accounts of customers Riley, Wiemken, Ballinger, Hernandez, Beverly, Pickering, Killion, and Grim.

the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## ANALYSIS

The parties dispute five issues, each of which is appropriate for summary judgment.

### Restoration of Customer Losses

Progressive argues the $66,679.99 paid back to customers, as interest they would have earned on their stolen money, is not recoverable by First Defiance under the terms of the Bond. In support of its position, Progressive cites Exclusion 2(s) of the Bond, which states: "[t]his Bond does not cover: . . . potential income, including but not limited to interest and dividends, not realized by the *Insured*" (emphasis added) (Doc. No. 39-2, p. 14). First Defiance argues the exclusion does not apply because the potential income at issue was not income to the insured, but instead to the customers of the insured.

The exclusion is straightforward. It applies to income lost by the insured. Payments to customers, while a loss to First Defiance, are not lost income of First Defiance. The lost income for First Defiance's customers is not the same as lost income "by the Insured."

The cases cited by Progressive are all factually distinguishable from the instant case. In all but one of the cited cases, the loss at issue was lost income or profit to the insured, not the insured's customers. *See First Am. State Bank v. Cont'l Ins. Co.*, 897 F.2d 319, 329 (8th Cir. 1990) (insured party "sustained . . . a loss of future interest"); *U.S. Gypsum v. Ins. Co. of N. Am.*, 813 F.2d 856, 857-59 (7th Cir. 1987) (insured sought coverage for income that it could have earned absent the fraud); *Diversified Group, Inc. v. Van Tassel*, 806 F.2d 1275, 1277-78 (5th Cir. 1987) (insured party sought

3

its lost profits); *FDIC v. Fid. & Deposit Co. of Md.*, 827 F. Supp. 385, 390 (M.D. La. 1993) (insured bank attempted to apply money repaid on fraudulent loans to its lost interest, rather than principal). In the remaining case, the exclusion language explicitly included customers of the insured. *Flagstar Bank v. Fed. Ins. Co.*, 2006 WL 2311125, *4, n. 6 (E.D. Mich. 2006) (exclusion included money "not realized . . . by any customer of the Assured").

Because the exclusion is limited to potential income not realized by First Defiance, the First Defiance payments to its customers to make them whole from the theft does not fall within the exclusion. Progressive is therefore liable for $931,921.31 paid to those customers, less the agreed upon credits and those credits determined below.

**First Defiance's Expenses**

First Defiance seeks $10,000 under the Bond's "Claims Expense Rider" (Doc. No. 39-2, p. 22). Progressive argues that First Defiance is not entitled to reimbursement for litigation expenses which are specifically excluded from the Bond.

The Expense Rider allows for recovery of "Reasonable Expenses necessarily incurred and paid by the Insured in preparing any valid and covered claim for loss caused by any dishonest or fraudulent act or acts of any of the Insured's Employees, which loss exceeds the Single Loss Deductible Amount." The Expense Rider limits the recovery of expenses to a maximum of $10,000. There is also a relevant exclusion to the Expense Rider, namely "all fees, costs and expenses incurred by the Insured . . . as a party to any legal proceeding whether or not such legal proceeding exposes the Insured to loss covered by this bond."

The parties stipulated that "First Defiance has incurred more than $10,000 in fees in preparing its claim for loss" (Stipulation, Doc. No. 54-1, ¶ 6). This stipulation tracks the language of the

4

Expense Rider. Furthermore, contrary to Progressive's suggestion (Doc. No. 54, p. 15), the plain language of the Stipulation does not include any litigation expenses described in the Expense Rider exclusion and is appropriately limited. Accordingly, First Defiance is entitled to the full $10,000 in expenses.

**Other Coverage from Cincinnati Insurance**

Cincinnati Insurance Company paid First Defiance $50,000 pursuant to the Commercial Crime Coverage Part of a policy issued by Cincinnati (Stipulation, Doc. No. 54-1, ¶ 4). Progressive believes the Bond allows it to credit Cincinnati's payment against First Defiance's covered loss. First Defiance disagrees.

Section 6 of the Bond states: "The value of any loss for purposes of coverage under this bond shall be the net loss to the Insured after crediting any receipts, payments or recoveries, however denominated, received by the Insured in connection with the transaction giving rise to the loss. If the loss involves a Loan, any interest or fees received by the Insured in connection with the Loan shall be such a credit" (Doc. No. 39-2, p 17). This section generally allows Progressive to credit other payments received by First Defiance in connection with this loss. Section 11 of the Bond specifically addresses situations where the insured has additional insurance for a covered loss, stating: "Coverage afforded hereunder shall apply only as excess over any valid and collectible insurance or indemnity obtained by the Insured" (Doc. No. 39-2, p. 19).

Section 11 is an "excess insurance" clause. With such a clause, an insurer's liability does not arise until the limits of the collectible insurance under another insurance policy have been exceeded. *See Wurth v. Ideal Mut. Ins. Co.*, 34 Ohio App.3d 325, 328 (1987). However, the Cincinnati policy has a similar excess insurance clause (Doc. No. 54-1, p. 9), presenting this Court with dueling excess

5

insurance clauses. "Where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies." *Buckeye Union Ins. Co., v. State Auto. Mut. Ins. Co.*, 49 Ohio St. 2d 213, 218 (1977); *see also Pierson v. Wheeland*, 2007 WL 1489814, *3-4 (Ohio App. 2007).

Here, the coverage limit on the Cincinnati policy for employee dishonesty is $50,000 (Doc. No. 54-1, p. 7), and the coverage limit on the Progressive fidelity Bond is $9,000,000 (Doc. No. 39-2, p. 2). Cincinnati's $50,000 payment was likely in excess of its actual pro rata share of First Defiance's loss. Had Cincinnati paid exactly its pro rata share, the Court would look only to Progressive's pro rata share when applying the Progressive deductible. This Court will treat the amount Cincinnati *actually* paid similarly.[3] Thus, the $50,000 Cincinnati payment must be deducted from Progressive's covered loss prior to applying the deductible.

**OBS Settlement**

The Complaint in this case named two related third-party broker-dealers, On-Line Brokerage Services and OBS Holdings (OBS) as Defendants, in addition to Progressive. First Defiance settled with OBS for $202,779.53 (Stipulation, Doc. No. 54-1, ¶ 8). Progressive argues this settlement amount must be credited against the loss, before applying the deductible. First Defiance argues the credit should be applied without applying the deductible on top of the credit.

The OBS settlement was in connection with certain brokerage customers' losses. In the settlement agreement, First Defiance agreed not to make "any further recovery from Progressive on

---

[3] Cincinnati might have a claim against Progressive for overpayment of its pro rata share, but that is a dispute for another day, if Cincinnati decides to pursue such a claim. *Cf. State Auto. Mut. Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Ohio App. 3d 139, 145 (2008) (determining overpayment of one insurer's pro rata share).

account of the Brokerage Customers" (Stipulation, Doc. No. 54-1, ¶ 8). Therefore, by agreement of the parties, the OBS settlement must be credited against the loss amount.

First Defiance concedes the OBS settlement must be credited, but argues for applying the OBS credit in lieu of the Bond's deductible (Doc. No. 54, pp. 6-8). The Bond contains no support for not independently applying the deductible. Thus, because the deductible must be applied, First Defiance effectively argues for an OBS credit based on that amount of the settlement greater than the deductible ($202,779.53 - $125,000 = $77,779.53). Were the Court to not apply the deductible, First Defiance would recover $125,000 "on account of the Brokerage Customers," contrary to the settlement agreement. Progressive is correct; both the OBS settlement amount and the Single Loss Deductible must be credited against the loss.

**Prejudgment Interest**

First Defiance argues for prejudgment interest based on Ohio Revised Code Section 1343.03(A). Progressive does not address prejudgment interest in its briefing and does not include prejudgment interest in its calculation of damages. Progressive arguably has conceded this issue by not articulating an opposition. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997)). Nonetheless, this Court will address the merits of First Defiance's argument.

Revised Code Section 1343.03(A) provides for mandatory prejudgment interest for contract claims. *Hance v. Allstate Ins. Co.*, 2009 WL 1663975, *4 (Ohio App. 2009). "An insurer is liable for an entire award up to the insured's policy limit plus any prejudgment interest awarded." *Miller v. Gunckle*, 96 Ohio St. 3d 359, 366 (2002). The trial court has discretion to determine "whether the prejudgment interest . . . should be calculated from the date coverage was demanded or denied, from

7

the date of the accident, from the date at which arbitration of damages would have ended if [the insurer] had not denied benefits, or some other time based on when [the insurer] should have paid [the insured.]" *Landis v. Mut. Ins. Co.*, 82 Ohio St. 3d 339, 342 (1997). The interest is not compounded. *Viock v. Stowe-Woodward Co.*, 59 Ohio App. 3d 3, 7 (1989) (interest under Revised Code Section 1343.03 is simple interest, not compound interest "when no specific provision for interest is noted").

In order to determine when the interest begins accruing, the court may examine when the amount of the judgment first became "due and payable" under Revised Code Section 1343.03(A). *Hance*, 2009 WL 1663975, \*4. First Defiance proposes prejudgment interest should be awarded from June 19, 2008, the date Progressive denied coverage. The Court concludes the denial date is appropriate. This is not a case where the insurer admitted coverage but disputed the amount of coverage, in which event the date of judgment might be the proper start date for interest to begin accruing. *See, e.g.*, *Hance*, 2009 WL 1663975, \*\*4-6. Instead, the instant case is more like *Landis*, where the insurer denied coverage altogether throughout the process. *Landis*, 82 Ohio St. 3d at 342 (leaving to the trial court's discretion whether prejudgment interest should be calculated from the coverage denial date or otherwise).

The denial date affords Progressive the time it required to determine its response to First Defiance's claim of loss. As this Court held, Progressive wrongly denied First Defiance's claim on that date, when it legally should have paid the claim (Doc. No. 51). Therefore, the judgment amount first became due and payable on the date of Progressive's denial.

According to the interest rates promulgated by the Ohio Tax Commissioner pursuant to Revised Code Section 5703.47, Progressive owes interest on the covered loss amount less the

8

deductible of 4.27% for the period of 2008 after Progressive's denial of coverage on June 19, 5.0% for 2009, and .011% per day for 2010.

## CONCLUSION

Given the above findings, First Defiance's damages are calculated as follows:

| | |
|---|---:|
| Total Loss Claimed | $931,921.31 |
| Recovery from Hunt | ( 57,219.54) |
| Cincinnati Insurance Recovery | ( 50,000.00) |
| First Defiance's Expenses | 10,000.00 |
| OBS Settlement | ( 202,779.53) |
| Single Loss Deductible | ( 125,000.00) |
| Subtotal | $506,922.24 |
| 2008 Interest (4.27%) | $ 21,645.58 |
| 2009 Interest (5.0%) | 25,346.11 |
| 2010 Interest as of 6/30 (.011% per day) | 10,092.82 |
| Total Interest | $ 57,084.51 |
| Total Liability | $ 564,006.75 |

The Court grants First Defiance's Motion for Summary Judgment (Doc. No. 53) for $564,006.75.

IT IS SO ORDERED.

                                              s/ *Jack Zouhary*
                                              JACK ZOUHARY
                                              U. S. DISTRICT JUDGE

                                              June 30, 2010